IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2014 MAY -7  AM 10: 58

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

CHARLES CHAMBERS,
                    **Plaintiff,**

-vs-                                                    Case No.  A-14-CA-086-SS

CITIMORTGAGE, INC. and FEDERAL HOME
LOAN MORTGAGE CORPORATION,
                    **Defendants.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants CitiMortgage, Inc. and Federal Home Loan Mortgage Corporation's Motion to Dismiss [#11], Plaintiff Charles Chambers's Response [#13], Defendants' Reply [#13], and Chambers's Sur-Reply [#16].[1] Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion to dismiss.

### Background

This is a suit to prevent or delay foreclosure on the real property located at 319 Old Mill Drive, Dripping Springs, Texas 78620. Chambers purchased the property in 2001, executing a Note and Deed of Trust in favor of ABN AMRO Mortgage Group, Inc., which has since merged into Defendant CitiMortgage. Chambers defaulted on the mortgage in late 2009 or early 2010, and CitiMortgage ultimately accelerated the loan in 2013 and began its attempts to foreclose. Chambers responded by filing a lawsuit in Texas state court to prevent the foreclosure. That suit ultimately

---

[1] Chambers's Motion for Leave to File Sur-Reply [#15] is GRANTED.

made its way to this Court, where, in response to a motion to dismiss, Chambers voluntarily dismissed the case. *See Chambers v. CitiMortgage, Inc.*, No. 1:13-CV-984-SS (W.D. Tex. Jan. 2, 2014).

Four weeks later, Chambers refiled this lawsuit in federal court.[2] Defendants moved to dismiss, and Chambers responded by filing an amended complaint. Chambers now asserts the following causes of action: (1) violations of the Real Estate Settlement Procedures Act (RESPA); (2) violations of the Truth in Lending Act (TILA); (3) violations of the Texas Business and Commerce Code; and (4) quiet title. Defendants have again moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## Analysis

### I.        Motion to Dismiss—Rule 12(b)(6)—Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must

---

[2] Chambers has apparently also filed both a Chapter 7 and a Chapter 13 bankruptcy case, both of which were dismissed because Chambers refused to participate in the proceedings by attending hearings and filing timely pleadings.

establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.    Application

The Court addresses each of Chambers's causes of action in turn.

## A.    RESPA Claims

Chambers alleges CitiMortgage violated RESPA in two ways. First, it allegedly failed to adequately respond to Chambers's Qualified Written Request (QWR). Second, it allegedly failed to suspend credit reporting upon receipt of Chambers's QWR.

As an initial matter, Chambers's amended complaint wholly fails to plead facts sufficient to establish he sent a QWR to CitiMortgage. Although Chambers pleads as much, his amended complaint does not attach the alleged QWR or describe its contents beyond parroting the statutory

requirements of a QWR. *Compare* 12 U.S.C. § 2605(e)(1)(B) (defining a QWR as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes . . . the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower") *with* Am. Compl. [#8] ¶ 21 ("Chambers sent a QWR to the Defendant CMI . . . . The QWR was a written request, not sent on a payment medium and was sent to the address provided by CMI for QWRs. It related to servicing of the loan; provided CMI with 'sufficient detail about the information Plaintiff was seeking'; and included information that enabled CMI to identify Chambers' name and account number."). As the Supreme Court explained in *Twombly*, "a formulaic recitation of the elements of a cause of action will not do," and Chambers's claims should be dismissed on this basis alone. *See Sheikholeslami v. BAC Home Loans Servicing, L.P.*, No. 4:11-CV-462, 2012 WL 669932, at *3 (E.D. Tex. Jan. 31, 2012), *report and recommendation adopted*, 2012 WL 669936 (E.D. Tex. Feb. 29, 2012) (dismissing RESPA QWR claim where plaintiffs failed to "attach their writings to the complaint or otherwise set forth the alleged contents of those writings").

But all is not lost! Chambers's alleged QWR is nonetheless in the record before the Court because Chambers attached it to his original complaint when he filed this lawsuit. *See* Compl. [#1-3], Ex. D. And Defendants have attached it again to their Motion to Dismiss. The Court therefore considers the substance of Chambers's alleged QWR, and concludes that it satisfies the statutory

requirements of a QWR but did not trigger any duty to respond or halt credit reporting by CitiMortgage.[3]

In his alleged QWR, Chambers requests two things:

1.   Please provide the name of the specific mortgage loan trust my federally related mortgage loan transaction was securitized and placed into and the date that the securitization took place.
2.   Please provide the name, address, and phone number of the true owner of this federally related mortgage loan transaction pursuant to 15 U.S.C. § 1641(f)(2) and describe your relationship to this entity.

Compl. [#1-3], Ex. D.

The Fifth Circuit has not spoken in any published opinion about the requirements of a QWR under RESPA. The plain language of the statute requires only that the document be "written correspondence" identifying the borrower's name and account and either stating "the reasons for the belief of the borrower . . . that the account is in error" or providing "sufficient detail . . . regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). At least two federal courts of appeals have held this language should be interpreted liberally without resort to "magic words" or similarly rigid requirements not present in the statutory language. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665–66 (9th Cir. 2012); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) ("Any reasonably stated written request for account information can be a qualified written

---

[3] For whatever reason, Chambers's Amended Complaint actually contains fewer relevant facts than his original complaint. Defendants chalk this up to gamesmanship, suggesting Chambers intended to prevent this Court from reviewing the contents of the alleged QWR in an effort to avoid dismissal, or perhaps encourage yet another round of repleading. The Court has no insight into the motivations for Chambers's pleading strategy, but simply notes repleading is not necessary here because the document central to Chambers's lawsuit was previously provided to the Court by Chambers himself. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (in ruling on motion to dismiss, court may consider documents attached to the complaint as well as documents attached to the motion to dismiss, if those documents are referred to in the complaint and central to the plaintiff's claims).

request."). Chambers's letter is written correspondence. It states his name and account number. And it requests "other information" with some detail. This is sufficient to constitute a QWR.

Both parties appear to agree there is yet another requirement, namely that the QWR request information related to servicing. Though the parties agree on the presence of this additional element, it is found nowhere within RESPA's definition of QWR. In fact, the Ninth Circuit in *Medrano*—a case cited by Chambers and discussed by CitiMortgage in its Reply—succinctly explained why both parties are wrong:

> The district court, like many courts that have addressed the issue, conflated the statutory analysis by declaring that the letters were not qualified written requests because they did not request information relating to servicing. Section 2605(e)(1)(B), which defines what is a qualified written request, does not refer to "information relating to . . . servicing." Instead, that requirement derives from § 2605(e)(1)(A), which requires, as conditions for triggering the duty to respond, both (1) that the letter is a qualified written request and (2) that it requests information relating to servicing.

*Medrano*, 704 F.3d at 666 n.4. Whether Chambers's letter requested information relating to servicing is therefore irrelevant to whether his request constituted a QWR, but critical to whether his QWR required CitiMortgage to do anything in response.

Chambers's RESPA claims fail because his QWR did not require CitiMortgage to respond or halt credit reporting activities.[4] The plain language of RESPA resolves the case: "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . *for information relating to the servicing of such loan*," the servicer must confirm receipt of the QWR within five days, respond fully within thirty days, and stop reporting the borrower's overdue

---

[4] In his Response, Chambers apparently abandons his failure-to-halt-credit-reporting claim, admitting his QWR "did not directly dispute the application of payments and does not meet the requirements of that part of the statute." Pl.'s Resp. [#11], at 12.

payments to credit agencies for sixty days. 12 U.S.C. § 2605(e)(1)(A) (emphasis added); *see also Medrano*, 704 F.3d at 666–67 (explaining RESPA's "statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers"). Similarly, the credit-reporting bar is only triggered by a QWR "relating to a dispute regarding the borrower's payments." 12 U.S.C. § 2605(e)(3).

Neither of Chambers's requests in his QWR relate to the servicing of his loan or a dispute regarding his payments. "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Chambers does not request any information about making payments to his servicer, CitiMortgage, or about CitiMortgage's application of his payments to his loan balance. He inquires about his loan's securitization and its ownership. And though Chambers now feigns ignorance about the identity of his servicer, Chambers sent the QWR—a request which must be sent to the servicer, not some other party—to CitiMortgage and had been engaged in loan modification discussions with CitiMortgage for *years* prior to sending the QWR. Am. Compl. [#8] ¶¶ 9–10.

The Court therefore holds Chambers's request, although satisfying the formal requirements of a QWR, did not trigger any obligation to respond or halt credit reporting because the request did not relate to servicing of the loan or a payment dispute. The Court's holding is consistent with numerous cases addressing similar borrower letters requesting information about loan ownership, loan modifications, or other non-servicing matters. *Anderson v. J.P. Morgan Chase*, No. H-13-1448, 2013 WL 6524630, at *5 (S.D. Tex. Dec. 11, 2013) (request for loan modification does not relate

to loan servicing); *Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-CV-2184-G(BH), 2013 WL 1187156, at *23 (N.D. Tex. Feb. 26, 2013), *adopted*, 2013 WL 1189215 (N.D. Tex. Mar. 22, 2013) (request for copies of note, deed of trust, and assignments fails to state RESPA claim); *Yetiv v. Chase Home Fin. LLC*, No. 4:11-CV-1250, 2012 WL 112597, at *6 (S.D. Tex. Jan. 11, 2012) (request for identity of note owner not related to loan servicing); *see also Medrano*, 704 F.3d at 667 n.5 (collecting district court cases holding correspondence challenging loan validity do not relate to servicing); *Hopson v. Chase Home Fin. LLC*, No. 3:12CV505TSL-JMR, 2014 WL 1411811, at *8 (S.D. Miss. Apr. 11, 2014) (request demanding ownership and securitization information to facilitate borrower's "audit" did not relate to loan servicing).

## B.    TILA Claim

Chambers alleges Federal Home Loan Mortgage Corporation (Freddie Mac) violated the Truth in Lending Act by failing to provide him notice of its ownership of his loan within thirty days of the transfer. *See* 15 U.S.C. § 1641(g)(1). Chambers's amended complaint, however, fails to allege the basic facts necessary to state a TILA claim. Most glaringly, Chambers does not allege Freddie Mac owns his loan. To the contrary, Chambers alleges he does not know who owns his loan, and suggests it may be Citibank, CitiMortgage, or Freddie Mac. This amounts to a failure to plead an essential element of a TILA claim. *See Price v. U.S. Bank Nat'l Ass'n*, No. 3:13-CV-0175-O, 2013 WL 3976624, at *10–11 (N.D. Tex. Aug. 2, 2013) (dismissing TILA claim where plaintiff purported to have "no idea" who owned her mortgage). Alternatively, Chambers has not pleaded any facts from which the Court can infer TILA—a statute passed in 2009—applies to his mortgage, which originated in 2001. If Freddie Mac is the owner, and received its ownership interest prior to TILA's passage, it was not obligated to provide a TILA notice to Chambers. *See Reardean v. Fed. Home*

*Loan Mortg. Corp.*, No. A-13-CA-1059-SS, 2014 WL 774939, at *4 (W.D. Tex. Feb. 24, 2014) (dismissing TILA claim based on 2005 assignment of mortgage).

**C.     Texas Business and Commerce Code Claim**

Chambers alleges Freddie Mac violated Texas Business and Commerce Code sections 9.210 and 9.406 by failing to respond to his queries regarding his mortgage. Those provisions of the Texas Business and Commerce Code are contained in Texas's adoption of the Uniform Commercial Code, in this case article 9. Chambers's claims fail because article 9 of the UCC does not apply to his mortgage, which is a lien on real property. *Tremble v. Wells Fargo Home Mortg., Inc.*, 478 F. App'x 164, 166 (5th Cir. 2012) (unpublished) (citing TEX. BUS. & COM. CODE § 9.109(d)(11); *Vogel v. Travelers Indemn. Co.*, 966 S.W.2d 748, 753 (Tex. App.—San Antonio 1998, no pet. h.)).

**D.     Quiet Title Claim**

Chambers seeks to quiet title in his favor. "The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). Chambers must concede his interest in the property is subject to the lien created by his initial mortgage of the property. Chambers does not allege he has made any payments on his mortgage since his default. Chambers argues his claim survives Rule 12 because he pleads the existence of his name on the deed to the property and pleads the Defendants "have no right to any interest" in the property. The first of those claims is a fact, but it establishes only an interest in the property; moreover, Chambers cannot dispute that interest is subject to his mortgage lien. The second claim is a legal conclusion unsupported by any alleged facts. Chambers does not challenge the validity of

the Deed of Trust or deny his default. Pleading confusion as to the owner of the mortgage does not

establish the Defendants' claim "is invalid or unenforceable." *See id.* ("A suit to quiet title relies on

the invalidity of the defendant's claim to the property."). Chambers has failed to state a quiet title

claim.

## Conclusion

Chambers has failed to state any claim for which relief can be granted, and has not shown

himself entitled to any relief in either law or equity. This is Chambers's second lawsuit against these

Defendants concerning this property, and at least his third complaint. Any additional leave to amend

would be futile, and the Court therefore dismisses Chambers's claims with prejudice.

Accordingly,

IT IS ORDERED that Plaintiff Charles Chambers's Motion for Leave to File Sur-

Reply [#15] is GRANTED;

IT IS FURTHER ORDERED that Defendants CitiMortgage, Inc. and Federal Home

Loan Mortgage Corporation's Motion to Dismiss [#11] is GRANTED;

IT IS FINALLY ORDERED that all claims brought by Plaintiff Charles Chambers

in the above-styled cause are DISMISSED WITH PREJUDICE.

SIGNED this the ___6th___ day of May 2014.


_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE